UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DPC NEW YORK, INC.,

                                    Plaintiff,

              - against -

SCOTTSDALE INSURANCE COMPANY,

                                    Defendant.

**ORDER**

19 Civ. 1743 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

              In this diversity action, Plaintiff DPC New York, Inc., a New York-based general
contractor, sues Defendant Scottsdale Insurance Company, an Ohio-based insurance company,
for indemnification and defense in connection with an insurance policy Scottsdale issued to
DPC.  Scottsdale has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).  For the
reasons stated below, Scottsdale's motion will be denied.

## BACKGROUND

I.      **FACTS**

        A.      **Underlying Action**

              Si Jie Mei, Inc., Mott & Prince Management, Inc., Vera Sung, Jill Sung, Heather
Sung, Chanterelle Sung, Vera Sung, and 18 Murray Street Condominium (the "Sung Plaintiffs")
own a building at 18 Murray Street in Manhattan (the "Sung Building").  The Sung Building has
commercial space on the first level/ground level and condominiums on the other remaining
floors.  (Sung Cmplt. (Dkt. No. 6-3) ¶¶ 2-12, 52-57)[1]  In 2017, the Sung Plaintiffs brought an

---

[1]  Because the Sung Complaint is attached as an exhibit to the Complaint in the instant case (see
Cmplt. (Dkt. No. 6-1) ¶ 8 and Ex. A (Dkt. No. 6-3), the Court has considered it in resolving
Defendant's motion to dismiss.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d

action against DPC and approximately 20 co-defendants (the "Sung Action") alleging that negligence in construction on an adjacent property – 19 Park Place in Manhattan – had caused damage to the Sung Building.  (Id. ¶¶ 64-65, 81, 125, 187, 217-28, 241-43, 251-57, 267-73, 287-89, 293-94)

The Sung Plaintiffs' complaint (the "Sung Complaint") alleges that DPC and its co-defendants are building and developing "a twenty-two stor[y] residential condominium building" at 19 Park Place.  (Id. ¶ 64)  The construction began in 2013.  (Id.)  The Sung Plaintiffs assert that the construction at 19 Park Place has caused a wide array of damage to the Sung Building.

Damage to the exterior of the elevator machine room at the Sung Building was discovered in January 2013 (id. ¶¶ 184-87), and in October 2013 the Sung Building experienced a gas leak, difficulty closing certain doors, elevator malfunctions, and cracks in interior and exterior walls.  (Id. ¶¶ 217-19, 227)  In November 2013, a slab in the sub-cellar of the Sung Building broke and collapsed into a hole, and the building's waste line began to leak.  (Id. ¶¶ 241-42)  An inspection of the Sung Building's elevator in November 2013 revealed that it was no longer safe.  Accordingly, elevator service was terminated.  (Id. ¶¶ 251-53)  A number of residential tenants in the Sung Building terminated their leases and vacated the building.  (Id. ¶ 254)

---

Cir. 2002) ("[A] complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)); see Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

In December 2013, pieces of the brick façade and veneer of the Sung Building fell off the building.  (Id. ¶ 269)  And in 2014, the Sung Building experienced cracked bricks and lintel in a window façade and continuing elevator dysfunction.  A window on the third floor of the Sung Building became dislodged and fell to the ground.  (Id. ¶¶ 334, 337, 341)

The Sung Complaint alleges claims against seventeen defendants and John Does in 482 numbered paragraphs, but it contains few allegations against DPC.  Most of the allegations address the conduct of ABN Realty LLC – the developer of the project at 19 Park Place – and the initial general contractor – BM of NY Construction.  (Id. ¶¶ 64-65, 67)  The damage described above appears to have occurred primarily while BM of NY was the general contractor for the project.

The Sung Complaint alleges that ABN Realty "terminated the services of BM of NY "sometime in 2014 or later" and hired DPC "to act as general contractor for the [19 Park Place] project site."  (Id. ¶ 351)  The Sung Complaint goes on to allege that "DPC continued work at the [19 Park Place] project site which has damaged and continues to imperil the integrity of [the Sung Building]."  (Id. ¶ 352)  The Sung Complaint provides no further detail as to the nature of the damage caused by DPC, and whether that damage was caused by DPC's negligence.  The Sung Complaint does, however, plead, inter alia, claims of negligence and gross negligence against DPC and all the other defendants named in the Sung Complaint.  (Id. ¶¶ 420-26, 452-61)

The Sung Action is pending in Supreme Court of the State of New York, New York County.  (Cmplt. (Dkt. No. 6-1) ¶ 9)

B.      **Scottsdale Insurance Policy**

DPC asserts that it maintained a commercial general liability insurance policy (the "Policy") with Scottsdale during 2014 and 2015.  In the Complaint, DPC seeks a declaratory judgment that, pursuant to the Policy, Scottsdale is obligated to indemnify and defend DPC in the Sung Action, and is liable for already-incurred defense costs of more than $30,000.  (Id. ¶¶ 11-17, 20-22, 24-30)  The term of the Policy is February 15, 2014 to February 15, 2015.[2] (Tammaro Decl., Ex. 3 (Dkt. No. 15-3) (Policy) at 6)[3]

In the Policy, Defendant agrees to

pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that my result.

(Id. at 22)

The "Coverages" section of the Policy further provides that

[t]his insurance applies to "bodily injury" and "property damage" only if:

---

[2]  Although the Insurance Policy (Tammaro Decl., Ex. 3 (Dkt. No. 15-3)) is not attached as an exhibit to the Complaint, it is referenced throughout the Complaint (Cmplt. (Dkt. No. 6-1) ¶¶ 11-12, 15-16, 19-20, 22, 24, 29) and is integral to DPC's claims.  Accordingly, the Court has considered the terms of the Insurance Policy in resolving Defendant's motion to dismiss.  See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010); Ilkowitz v. Durand, No. 17 Civ. 773 (PGG), 2018 WL 1595987, at *7 (S.D.N.Y. Mar. 27, 2018); Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC, 11 Civ. 3327 (ER), 2013 WL 417406, at *6 (S.D.N.Y. Feb. 4, 2013) (Courts may "properly consider documents or information [outside of the Complaint] . . . if the plaintiff has knowledge or possession of the material and relied on it in drafting the complaint." (citations omitted)); see also Cockill v. Nationwide Prop. & Cas. Ins. Co., No. 3:18cv254 (MPS), 2018 WL 6182422, at *1 (D. Conn. Nov. 27, 2018) ("Here, I consider the insurance policy, which is attached to [Defendant's] motion to dismiss.").
[3]  Citations to page numbers of docketed materials correspond to the pagination generated by this District's Electronic Case Files ("ECF") system.

> . . . [t]he "bodily injury" or "property damage" occurs during the policy period. . . .

> [The] "[b]odily injury" or "property damage" . . . occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured . . . includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

(Id. at 22)

The Policy contains a "Continuing or Ongoing Damage Exclusion" which reads as follows:

> This insurance does not apply to "property damage" when any of the following apply:

> **Continuing or Ongoing Damage**

> 1. The "property damage" first occurred, began to occur or is alleged to have occurred or been in the process of occurring, to any degree, in whole or in part, prior to the inception date of this policy.

> 2. The "property damage" is indiscernible from other damage that is incremental, continuous or progressive damage arising from an "occurrence" which first occurred, began to occur or is alleged to have occurred, to any degree, in whole or in part, prior to the inception date of this policy.

(Id. at 55 (emphasis in original))

The Policy also contains a "Residential Building Project Exclusion," which reads as follows:

> This insurance does not apply to damages because of "bodily injury," "property damage," "personal and advertising injury" or "error or omission" arising from "your work" on, in connection with or in any way related to a "residential project."

> For those items identified below with an "x" in the corresponding box, this exclusion shall not apply to "your work":

> X 1. That consists of repair, renovation, or remodeling operations on structures officially certified for occupancy prior to the commencement of "your work." . . .

5

X 5. In states other than AZ, CA, CO, LA, NV, TX and WA that involve the original development or original construction of, and which commences during the policy period on no more than an initial twelve (12) of[] any of the following types of individual living units:  Single family homes, townhouses, townhomes, residential condominium or cooperative units, duplex units, any type of structural units converted into condominium units, or any other type of domicile unit intended for individual or collective residential ownership.
. . . .

For purposes of this endorsement:

"Residential project" shall mean any building construction project, including structural repair, renovation, or remodeling operations, involving one or more single-family homes, townhouses, townhomes, residential condominiums or cooperatives, duplexes, any type of structure converted into condominiums, or any other type of domicile intended for individual or collective residential ownerships, and shall include all buildings appurtenant [to] these structures.

"Residential project" shall also include any building construction project, including structural repair, renovation or remodeling operations, involving mixed-use buildings which contain both residential units and commercial space, and shall include all buildings appurtenant [to] these structures.

"Residential project" shall not mean apartments unless "your work" involves converting apartments into condominiums or cooperatives or into any other type of domicile intended for individual or collective residential ownership.

We shall have no duty or obligation to provide or pay for the investigation or defense of any loss, cost, expense, claim or "suit" excluded by this endorsement.

(Id. at 67-68)

## II.   **PROCEDURAL HISTORY**

The Complaint was filed on January 27, 2019, in Supreme Court of the State of New York, New York County.  (Cmplt. (Dkt. No. 6-1)  On February 25, 2019, Defendant removed the action to this District based on diversity of citizenship, pursuant to 28 U.S.C. §§ 1332, 1446.  (Notice of Removal (Dkt. No. 6))

Defendant Scottsdale has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Def. Mot. (Dkt. No. 14); Tammaro Decl. (Dkt. No. 15); Def. Br. (Dkt. No. 16))

## DISCUSSION

## I.   LEGAL STANDARDS

### A.   Rule 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "factual allegations sufficient 'to raise a right to relief above the speculative level.'"  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In other words, the complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'"  Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In applying this standard, a court accepts as true all well-pleaded factual allegations but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  Id.  Moreover, a court will give "no effect to legal conclusions couched as factual allegations."  Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).  When a court can infer no more than the mere possibility of misconduct from the factual averments – in other words, where the well-pled allegations of a complaint have not "nudged [plaintiff's] claims across the line from conceivable to plausible" – dismissal is appropriate.  Twombly, 550 U.S. at 570.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco, 622 F.3d at 111 (citing Chambers, 282 F.3d at 153; Hayden v. County of Nassau, 180 F.3d 42,

54 (2d Cir. 1999)).  For documents to be incorporated by reference, "the complaint must make 'a clear, definite and substantial reference to the documents.'"  DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003)).

"[L]imited quotation" of a document, Goldman v. Belden, 754 F.2d 1059, 1066 (2d Cir. 1985), or a mere passing reference to a document, does not incorporate the document into the complaint.  See, e.g., Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint."); Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989) (although the amended complaint "discussed [certain] documents and presented short quotations from them[,]" these passing references and "brief[ ] excerpt[s]" are insufficient for incorporation by reference).

"Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."  DiFolco, 622 F.3d at 111 (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).  For a document to be integral to a complaint, "the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] document[ ] in framing the complaint.'"  DeLuca, 695 F. Supp. 2d at 60 (quoting Chambers, 282 F.3d at 153); Chambers, 282 F.3d at 153 ("[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal matter; mere notice or possession is not enough.") (emphasis in original); see also Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. July 21, 2006) (a court may rely on material extraneous to the complaint if the

8

material is integral to the complaint and was relied on by the plaintiff in drafting the complaint).

"A matter is deemed 'integral' to the complaint when the complaint 'relies heavily upon its terms

and effect.'  Typically, an integral matter is a contract, agreement, or other document essential to

the litigation."  Palin v. New York Times Co., 940 F.3d 804, 811 (2d Cir. 2019).  "For a court to

regard a document as 'integral,' 'it must be clear on the record that no dispute exists regarding

the authenticity or accuracy of the document,' and '[i]t must also be clear that there exist no

material disputed issues of fact regarding the relevance of the document.'"  Clybourn v.

Spiderbands LLC, No. 18 CIV. 03688 (ER), 2018 WL 6528234, at *2 (S.D.N.Y. Dec. 12, 2018)

(quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)).

A court considering a Rule 12(b)(6) motion to dismiss may also take judicial

notice of certain material.  For example, courts may take judicial notice of publicly filed records.

See Kramer v. Time-Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991).  However, while it may be

"proper to take judicial notice of the fact that press coverage, prior lawsuits, or regulatory filings

contained certain information," such notice must be taken "without regard to the truth of their

contents."  Staehr v. Hartford Financial Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008)

(emphasis in original) (citing Global Network Commc'ns, Inc. v. City of New York, 458 F.3d

150, 157 (2d Cir. 2006) (court filings); Kavowras v. N.Y. Times Co., 328 F.3d 50, 57 (2d Cir.

2003) (SEC filings); LC Capital Partners, LP v. Frontier Ins. Grp., Inc. 318 F.3d 148, 155 (2d

Cir. 2003) (press coverage and prior litigation); Kramer, 937 F.2d at 774 ("[C]ourts routinely

take judicial notice of documents filed in other courts . . . to establish the fact of such litigation

and related filings.")).

## II.   __ANALYSIS__

Defendant contends that the Complaint must be dismissed because it is clear, as a matter of law, that "[t]here is no coverage for this matter under the policy issued by Scottsdale to DPC[,] . . . and Scottsdale has no duty to defend DPC in the [Sung Action] . . . [and] no duty to indemnify DPC."  (Def. Br. (Dkt. No. 16) at 6)  According to Defendant, the "Continuing or Ongoing Damage Exclusion" and the "Residential Building Project Exclusion" each preclude coverage.  (Def. Br. (Dkt. No. 19) at 5-6)

Plaintiff asserts, however, that "Plaintiff's pleadings . . . are sufficient to maintain a cause of action."  (Pltf. Br. (Dkt. No. 18) at 6)  Plaintiff contends that Defendant has not established that either of the policy exclusions referenced above apply, and that even if the Residential Building Project Exclusion applies, several exceptions to that exclusion are applicable.  (Id. at 7-10)  Plaintiff argues that "at the very least, [D]efendant has a duty to defend [P]laintiff in the [Sung A]ction."  (Id. at 11)

### A.   __Declaratory Judgment Act__

The Declaratory Judgment Act grants district courts discretion to determine whether to exercise jurisdiction over a proposed declaratory action.  The statute provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "Courts have consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear."  Dow Jones & Co., Inc. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003).

In determining whether declaratory relief is warranted, "[t]he court must consider whether a declaratory judgment will (1) 'serve a useful purpose in clarifying and settling the legal relations in issue;' or (2) 'afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Camofi Master LDC v. College Partnership, Inc., 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006) (quoting Cont'l Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir. 1992) (internal citation omitted)).  When the court in its discretion determines that either of these conditions is satisfied, it is "'required to entertain a declaratory judgment action.'" Cosa Instrument Corp. v. Hobre Instruments BV, 698 F. Supp. 2d 345, 350 (E.D.N.Y. 2010) (emphasis omitted) (quoting Starter Corp. v. Converse. Inc., 84 F.3d 592, 597 (2d Cir. 1996)).

A declaratory judgment action must meet the "case or controversy" requirement in that it "must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.  The relief is available only for a concrete case admitting of an immediate and definite determination of the legal rights of the parties." Pub. Serv. Comm'n v. Wycoff Co., Inc., 344 U.S. 237, 244 (1952) (internal quotation marks omitted) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241 (1937)); see also 28 U.S.C. § 2201(a).

This Court concludes that an actual "case or controversy" exists, as DPC and Scottsdale dispute whether Scottsdale has an obligation, under the Policy, to defend and indemnify DPC against the Sung Action.  Moreover, the instant action could provide the parties with specific, conclusive relief in connection with resolving whether Scottsdale has a duty under the Policy to defend and indemnify DPC.  "When a determination of the duty to defend can be made and thus clarify the insurer's obligations in the underlying tort action, the D[eclaratory] J[udgment] A[ct] is properly invoked." U.S. Underwriters Ins. Co. v. Kum Gang, Inc., 443 F.

Supp. 2d 348, 352-53 (E.D.N.Y. 2006) (citing Metropolitan Prop. & Liab. Ins. Co. v. Kirkwood, 729 F.2d 61, 63 (1st Cir. 1984)).  This Court will therefore exercise its discretion to entertain this declaratory judgment action.

> **B.      Choice of Law**

"[F]ederal courts sitting in diversity apply state substantive law and federal procedural law."  Liberty Synergistics Inc. v. Microflo Ltd., 718 F.3d 138, 152 (2d Cir. 2013) (quoting Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996).  "Insurance contracts in diversity actions must be interpreted under the applicable state law."  Alfin, Inc. v. Pac. Ins. Co., 735 F. Supp. 115, 118 (S.D.N.Y. 1990) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).

Here, Plaintiff asserts that New York substantive law applies (see Pltf. Br. (Dkt. No. 18) at 11 (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), and Defendant cites New York law throughout its brief.  (Def. Br. (Dkt. No. 16) at 17)  Because the parties argue for the application of New York law, this Court will apply New York substantive law.  Nat'l Union Fire Ins. Co. of Pittsburg v. Beelman Truck Co., 203 F. Supp. 3d 312, 317 (S.D.N.Y. 2016) ("The Court will apply New York law in this case because "[t]he parties' briefs assume that New York substantive law governs the issues . . . presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law." (quoting Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 39 (2d Cir. 2009)).

> **C.      Relevant Principles of New York Insurance Law**

>> **1.      Duty to Defend**

Under New York law, an insurer's duty to defend is "exceedingly broad."  See Northville Indus. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 218 A.D.2d 19, 24-25 (2d

Dep't 1995) (collecting cases); see also International Bus. Mach. Corp. v. Liberty Mut. Fire Ins. Co., 303 F.3d 419, 424 (2d Cir. 2002) (quoting Continental Cas. Co. v. Rapid-Am. Corp., 80 N.Y.2d 640, 648 (N.Y. 1993)).  The insurer must defend "'whenever the four corners of the complaint suggest – or the insurer has actual knowledge of facts establishing – a reasonable possibility of coverage'" under the policy.  MBIA Inc. v. Certain Underwriters at Lloyd's, London, 33 F. Supp. 3d 344, 354 (S.D.N.Y. 2014) (quoting Maryland Cas. Co. v. Continental Cas. Co., 332 F.3d 145, 160 (2d Cir. 2003) (quoting Continental, 80 N.Y.2d at 648)). Accord Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co., 819 F. Supp. 2d 247, 256-57 (S.D.N.Y. 2011) (noting that New York law permits consideration of facts extrinsic to the four corners of the complaint in determining a duty to defend); Fitzpatrick v. American Honda Motor Co., Inc., 78 N.Y.2d 61, 67 (1991) (holding that "rather than mechanically applying only the 'four corners of the complaint' rule . . . the sounder approach is to require the insurer to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage").

Indeed, "[a]n insurer may avoid its duty to defend only if it establishes, as a matter of law, that 'there is no possible factual or legal basis on which [the insurer] might eventually be obligated to indemnify [the insured] under any provision of the insurance policy.'" MBIA Inc., 33 F. Supp. 3d at 354 (quoting Allianz Ins. Co. v. Lerner, 416 F.3d 109, 115 (2d Cir. 2005) (quotation marks and citations omitted).  Accord Maryland Cas. Co., 332 F.3d at 160; State Farm Fire & Cas. Co. v. Joseph M., 106 A.D.3d 806, 807 (2d Dep't 2013).

In order to demonstrate that it has no duty to defend an insured, an insurer

> must demonstrate "that the allegations of the [underlying] complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify under any policy provision." Frontier Insulation Contractors v. Merchs. Mut. Ins. Co., 91 N.Y.2d 169, 667 N.Y.S.2d 982, 690 N.E.2d 866, 868-69 (N.Y. 1997) (citing Cont'l Cas.

<u>Co. v. Rapid-Am. Corp.</u>, 80 N.Y.2d 640, 593 N.Y.S.2d 966, 609 N.E.2d 506, 512
(N.Y. 1993)); <u>see</u> also <u>City of Johnstown, N.Y. v. Bankers Standard Ins. Co.</u>, 877
F.2d 1146, 1149 (2d Cir. 1989) ("A court applying New York law . . . should only
excuse an insurer from its duty to defend if it can be concluded as a matter of law
that there is no possible factual or legal basis on which the insurer might
eventually be held to indemnify the insured." (citing <u>Villa Charlotte Bronte, Inc.</u>
<u>v. Commercial Union Ins. Co.</u>, 64 N.Y.2d 846, 487 N.Y.S.2d 314, 476 N.E.2d
640, 641 (N.Y. 1985))); <u>Frontier Insulation</u>, 667 N.Y.S.2d 982, 690 N.E.2d at 869
("If any of the claims against the insured arguably arise from covered events, the
insurer is required to defend the entire action." (citing <u>Seaboard Sur. Co. v.</u>
<u>Gillette Co.</u>, 64 N.Y.2d 304, 486 N.Y.S.2d 873, 476 N.E.2d 272, 275 (N.Y.
1984))); <u>Ruder & Finn, Inc. v. Seaboard Sur. Co.</u>, 52 N.Y.2d 663, 439 N.Y.S.2d
858, 422 N.E.2d 518, 521 (N.Y.1981) ("The duty to defend ... includes the
defense of those actions in which alternative grounds are asserted, even if some
are without the protection purchased." (citing <u>Int'l Paper Co. v. Cont'l Cas.</u>
<u>Co.</u>, 35 N.Y.2d 322, 361 N.Y.S.2d 873, 320 N.E.2d 619, 621 (N.Y.1974))).

<u>Nat'l Cas. Co. v. Vigilant Ins. Co.</u>, 466 F. Supp. 2d 533, 538 (S.D.N.Y. 2006); <u>see</u> <u>also</u> <u>CGS</u>

<u>Indus., Inc. v. Charter Oak Fire Ins. Co.</u>, 720 F.3d 71, 77 (2d Cir. 2013) ("To avoid the duty to

defend, an insurer must demonstrate that the allegations of an underlying complaint place that

pleading solely and entirely within the exclusions of the policy and that the allegations are

subject to no other interpretation." (citation and internal quotation marks omitted)); <u>Ocean</u>

<u>Partners, LLC v. North River Ins. Co.</u>, 546 F. Supp. 2d 101, 110 (S.D.N.Y. 2008) ("The insurer

must establish that the exclusion is stated in clear and unmistakable language, is subject to no

other reasonable interpretation, and applies in the particular case and that its interpretation of the

exclusion is the only construction that could fairly be placed thereon." (citation and internal

quotation marks omitted)); <u>W. Heritage Ins. Co. v. Jacobs Dev. Corp.</u>, No. 12-CV-5718 NGG

LB, 2014 WL 297792, at *5 (E.D.N.Y. Jan. 27, 2014).

        An insured has the burden of proving that a claim is covered, while the insurer has

the burden of proving that an exclusion applies.  <u>Ment Bros. Iron Works Co., Inc. v. Interstate</u>

<u>Fire & Cas. Co.</u>, 702 F.3d 118, 121 (2d Cir. 2012) ("Under New York law, . . . an insurer bears

the burden of proving that an exclusion applies."); <u>Mario v. P&C Markets, Inc.</u>, 313 F.3d 758,

765 (2d Cir. 2002) (citing Morgan Stanley Grp. Inc. v. New England Ins. Co., 225 F.3d 270, 276 & n.1 (2d Cir. 2000); Northville Indus. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 89 N.Y.2d 621, 634 (1997) ("In determining whether coverage is barred under a general liability insurance policy which excludes coverage for bodily injury or property damage arising out of a [certain situation], but contains an exception to the exclusion . . . , an insurer has the burden of establishing that the underlying complaint alleges [facts] satisfying the basic requirement for application of the [situational] exclusion provision.").  Once "an insurer establishes that a policy exclusion applies, the burden shifts to the policyholder to prove that an exception to that exclusion applies."  Ment Bros., 702 F.3d at 122 (collecting cases).

### 2.    Duty to Indemnify

Under New York law, an "insurer's duty to furnish a defense is broader than its obligation to indemnify."  Seaboard Sur. Co. v. Gillette Co., 64 N.Y.2d 304, 310 (1984)); see also EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co., 905 F.2d 8, 11 (2d Cir. 1990) ("[T]he duty to defend is broader than the duty to indemnify.").  "It stands to reason, then, if there is no duty to defend, there can be no duty to indemnify."  BF Advance, LLC v. Sentinel Ins. Co., Ltd., No. 16-CV-5931 (KAM)(JO), 2018 WL 4210209, at *14 (E.D.N.Y. Mar. 20, 2018) (quoting Lewis & Stanzione v. St. Paul Fire & Marine Ins. Co., No. 13-cv-863, 2015 WL 3795780, at *5 (N.D.N.Y. June 17, 2015) (citing EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co., 905 F.2d 8, 11 (2d Cir. 1990)).

> "Courts often distinguish between the duty to defend and the duty to indemnify in determining whether each issue posed in a declaratory judgment action is ripe for adjudication," because the duties are usually triggered by different conditions. See Atl. Cas. Ins. Co. v. Value Waterproofing, Inc., 918 F. Supp. 2d 243, 261 (S.D.N.Y. 2013).  The duty to defend generally "is triggered by the filing of a lawsuit," whereas the duty to indemnify generally "is triggered by a determination of liability."  Id.

Lafarge Canada Inc. v. Am. Home Assurance Co., No. 15-CV-8957 (RA), 2018 WL 1634135, at
*4 (S.D.N.Y. Mar. 31, 2018).

       **D.**       **The Policy Exclusions Cited By Scottsdale**

       Scottsdale cites to the Policy's "Continuing or Ongoing Damage" exclusion and
the "Residential Building Project" exclusion in arguing that it has no duty to defend DPC.  The
Court considers each exclusion below.

       **1.**       **"Continuing or Ongoing Damage" Exclusion**

       The term of the Policy is February 15, 2014 to February 15, 2015.  (Tammaro
Decl., Ex. 3 (Dkt. No. 15-3) (Policy) at 6)  In the Complaint, DPC does not allege when it began
work as the general contractor for the 19 Park Place project.  However, DPC alleges that the
Sung Plaintiffs have claimed that DPC "negligently performed construction operations on
property located at 19 Park Place, New York, New York during 2014 and 2015."  (Cmplt. (Dkt.
No. 6-1) ¶ 8)  DPC has also attached the Sung Complaint as an exhibit to its complaint against
Scottsdale.  (Sung Cmplt. (Dkt. No. 6-3))

       As discussed above, the Sung Complaint contains few allegations against DPC.  It
is clear from the Sung Complaint, however, that the Sung Plaintiffs are alleging that DPC
became the general contractor for the 19 Park Place site at some point in 2014, after ABN Realty
fired the original general contractor BM of NY.  (Sung Cmplt. ¶ 351)  The Sung Complaint goes
on to allege that "DPC continued work at the [19 Park Place] project site which has damaged and
continues to imperil the integrity of [the Sung Building]."  (Id. ¶ 352)

       Although the Sung Complaint provides no further detail as to the nature of the
damage caused by DPC, and whether that damage was caused by DPC's negligence, it is a fair
reading of the Sung Complaint that the Sung Plaintiffs are claiming that DPC was negligent,

16

given that the Sung Plaintiffs have brought claims for negligence and gross negligence against DPC.  (Id. ¶¶ 420-26, 452-61).  It is also clear from the Sung Complaint that the Sung Plaintiffs are claiming that DPC engaged in conduct that caused damage to the Sung Building, and which "imperiled the integrity of" the Sung Building.  (Id. ¶ 352)

Given that the Policy provides DPC with coverage for "property damage" caused by its negligence during the term of the Policy in connection with the 19 Park Place project (see Tammaro Decl., Ex. 3 (Dkt. No. 15-3) at 22), the claims made in the Sung Action against DPC would appear to be covered by the Policy.

Scottsdale argues, however, that DPC has no coverage for these claims, because they are subject to the Policy's "Continuing or Ongoing Damage" exclusion.  As discussed above, the "Continuing or Ongoing Damage" exclusion provides as follows:

> This insurance does not apply to "property damage" when any of the following apply:
>
> **Continuing or Ongoing Damage**
>
> 1. The "property damage" first occurred, began to occur or is alleged to have occurred or been in the process of occurring, to any degree, in whole or in part, prior to the inception date of this policy.
>
> 2. The "property damage" is indiscernible from other damage that is incremental, continuous or progressive damage arising from an "occurrence" which first occurred, began to occur or is alleged to have occurred, to any degree, in whole or in part, prior to the inception date of this policy.

(Def. Decl., Ex. 3 (Dkt. No. 15-3) at 55 (emphasis in original))

Scottsdale contends that this exception

> provides that there can be no coverage under the Scottsdale Policy for "property damage" that first occurred, began to occur or is alleged to have occurred or been in the process of occurring, to any degree, in whole or in part, prior to the inception date of this policy.  The [Sung] Complaint alleges that the "property damage" to the neighboring property first occurred in October 2013, and alleges

> that this "property damage" continued to occur and was in the process of
> occurring prior to the February 15, 2014 inception of the Scottsdale Policy.

(Def. Br. (Dkt. No. 16) at 7)

Given the absence of detail in the Sung Complaint concerning DPC's alleged negligence and the damage it caused to the Sung Building, however, it is impossible to determine what, if any, relationship exists between DPC's alleged negligence and the damage it allegedly caused to the Sung Building, and the damage the Sung Building sustained before DPC was hired as general contractor. Accordingly, the applicability of the "Continuing or Ongoing Damage" exclusion provision is unknown. We don't know, for example, whether there is any connection between the damage DPC allegedly caused to the Sung Building and the damage caused before DPC was hired as the general contractor. Given these circumstances, this Court cannot rule – at this very early stage of the proceedings – "'that the allegations of the [underlying] complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify under any policy provision.'" Nat'l Cas. Co., 466 F. Supp. 2d at 538 (quoting Frontier Insulation Contractors, 91 N.Y.2d 169, 175 (1997)). Nor has Scottsdale shown that there is "no possible factual or legal basis on which the insurer might eventually be held to indemnify the insured." City of Johnstown, N.Y. v. Bankers Standard Ins. Co., 877 F.2d 1146, 1149 (2d Cir. 1989) (internal quotations omitted) (citing Villa Charlotte Bronte, Inc. v. Commercial Union Ins. Co., 64 N.Y.2d 846, 848 (1985)).

Scottsdale Ins. Co. v. LCB Construction LLC, No. 11-CV-3316(ARR)(JMA), 2012 WL 1038829 (E.D.N.Y. Feb. 14, 2012), cited by Scottsdale (Def. Br. (Dkt. No. 16) at 25), is not persuasive here. Although that case involves application of the "Continuing or Ongoing Damage" exclusion, the court there was considering an application for a default judgment.

Because of the insured's failure to appear, Scottsdale's allegations in its declaratory judgment action were "deemed true." LCB Construction, 2012 WL 1038829, at *3.  The instant case is being litigated, and DPC disputes Scottsdale's interpretation of the Policy.  (See Pltf. Br. (Dkt. No. 18))  Moreover, the insured in LCB Construction had failed to cooperate, and the court denied coverage on that basis.  LCB Construction LLC, 2012 WL 1038829 at *3.  The court also denied coverage based on an exclusion – the "earth movement exclusion" – not at issue here.  (Id. at *4).  Finally, as to the "Continuing or Ongoing Damage" exclusion, in LCB Construction it was undisputed – as a result of the insured's default – that the insured had caused property damage prior to the onset of the policy, and that the property damage at issue was of the same nature as that caused prior to the policy's onset date.  (Id. at *1-2, *4)

To the extent that Scottsdale's motion to dismiss is premised on the "Continuing or Ongoing Damage" exclusion, its motion to dismiss will be denied.

## 2.    "Residential Building Project" Exclusion

Scottsdale also argues that the "Residential Building Project" exclusion applies to bar DPC's claim for defense and indemnification.  (Def. Br. (Dkt. No. 16) at 20-25)  The "Residential Building Project" exclusion states, in relevant part, that "[t]his insurance does not apply to damages because of . . . 'property damage' . . . on, in connection with or in any way related to a "residential project. . . . We shall have no duty or obligation to provide or pay for the investigation or defense of any loss, cost, expense, claim or 'suit' excluded by this endorsement." (Tammaro Decl., Ex. 3 (Dkt. No. 15-3) at 67-68)

A "residential project" is defined in the Policy as

> any building construction project, including structural repair, renovation, or
> remodeling operations, involving one or more single-family homes, townhouses,
> townhomes, residential condominiums or cooperatives, duplexes, any type of
> structure converted into condominiums, or any other type of domicile intended for

19

individual or collective residential ownerships, and shall include all buildings appurtenant [to] these structures.

"Residential project" shall also include any building construction project, including structural repair, renovation or remodeling operations, involving mixed-use buildings which contain both residential units and commercial space, and shall include all buildings appurtenant [to] these structures.

"Residential project" shall not mean apartments unless "your work" involves converting apartments into condominiums or cooperatives or into any other type of domicile intended for individual or collective residential ownership.

(Id. at 67-68)

The Policy contains two exceptions to the "Residential Building Project" exclusion:  (1) activities that consist "of repair, renovation, or remodeling operations on structures officially certified for occupancy prior to the commencement of 'your work'"; and (2) activities "[i]n states other than AZ, CA, CO, LA, NV, TX and WA that involve the original development or original construction of, and which commences during the policy period on no more than an initial twelve (12) of[] any of the following types of individual living units:  Single family homes, townhouses, townhomes, residential condominium or cooperative units, duplex units, any type of structural units converted into condominium units, or any other type of domicile unit intended for individual or collective residential ownership."  (Id. at 67)

Scottsdale argues that 19 Park Place "clearly qualifies as a residential project," as that term is defined in the Policy (see Def. Br. (Dkt. No. 16) at 20-21 (citing Tammaro. Decl., Ex. 3 (Dkt. No. 15-3) at 67), because the Sung Complaint describes 19 Park Place as "a twenty-two stor[y] residential condominium building." (Id. at 24 (quoting Sung Cmplt. (Dkt. No. 6-3) ¶ 64))

The Sung Complaint does in fact describe the 19 Park Place project as the "construction and development of a twenty-two story residential condominium building."  (Sung

Cmplt. (Dkt. No. 6-3) ¶ 64)  Although DPC states that "the question of whether a building is

'residential' in character requires discovery into the nature of that building and its occupants,"

Pltf. Br. (Dkt. No. 18) at 7, DPC attached the Sung Complaint to its complaint in the instant

action, and this Court is thus entitled to rely on the Sung Complaint in determining whether DPC

has pled a plausible coverage claim.

        DPC argues, however, that one of the exceptions to the "Residential Building

Project" exclusion – for "repair, renovation, or remodeling operations on structures certified for

occupancy" – may be applicable.  According to DPC, "[t]he record on this motion does not

establish whether the building at 19 Park Place, where plaintiff was working, had been certified

for residential occupancy prior to the beginning of such work.  Delving into this questions would

require consideration of issues of fact and would require discovery, thus making these issues

beyond the appropriate scope for a Rule 12 motion."  (Id. at 8)

        Neither DPC's complaint nor the Sung Complaint plead facts concerning the

number of units planned for 19 Park Place, or whether a certificate of occupancy had been

obtained for the project.  As to the number of units, Scottsdale contends that this Court can "take

judicial notice of the website for 19 Park Place, which clearly states that 19 Park Place contains

'21 distinct full- and half-floor residencies."  (Def. Reply Br. (Dkt. No. 19) at 10 (quoting

https://19pptribeca.com/))  As discussed above, however – as to matters of which judicial notice

is taken – this Court cannot rely on these materials for their truth.  See Staehr v. Hartford

Financial Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008) (citing Global Network Commc'ns,

Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (court filings); Kavowras v. N.Y.

Times Co., 328 F.3d 50, 57 (2d Cir. 2003) (SEC filings); LC Capital Partners, LP v. Frontier Ins.

Grp., Inc. 318 F.3d 148, 155 (2d Cir. 2003) (press coverage and prior litigation); Kramer, 937

F.2d at 774 ("[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings.")).  Accordingly, there is no record evidence as to how many units 19 Park Place was to contain.

Defendant also asserts that no certificate of occupancy has been issued for 19 Park Place, relying on the absence of such a record on the Department of Buildings website. (Def. Reply Br. (Dkt. No. 19) at 7)  Defendant asks the Court to take judicial notice of certain materials available on the Department of Buildings website, which it claims demonstrate that no certificate of occupancy exists.

The Court is not convinced that this issue can be resolved as a matter of law pre-discovery.  Accordingly, to the extent that Defendant's motion to dismiss is predicated on the "Residential Building Project" exclusion, its motion to dismiss will be denied.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is denied.  The Clerk of Court is directed to terminate the motion (Dkt. No. 14).

Dated:  New York, New York
       May 19, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

22